Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8968 | **DATE** | 1/5/2004 |
| **CASE TITLE** | USA, etc. vs. Norden Enterprises, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendants' motion for partial summary judgment (44-1) is granted. Count I of the complaint, filed pursuant to the Miller Act, is dismissed as to claims for monies owed under the subcontract with Norden and any agreement with As-Ra. Additionally, defendant Henderson and Travelers' motion to dismiss (83-1) As-Ra's cross-claim filed under the Miller Act is granted. As set forth in or previous order, the parties are to file their joint pretrial order on 1/29/04 at 10:30 a.m. It is so ordered.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | **JAN 06 2004** date docketed | 95 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | Docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | 1/5/2004 | |
| GL | courtroom deputy's initials | 04 JAN -6 AM 1:28 Date/time received in central Clerk's Office | date mailed notice GL mailing deputy initials | |

# UNITED STATES DISTRICT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Department of Navy, Wholesale Revitalization for the use and benefit of TORRES DRYWALL SERVICES, INC., | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 01 C 8968 |
| NORDEN ENTERPRISES, LLC; AS-RA TECHNOLOGIES, INC.; JOSEPH J. HENDERSON & SON, INC.; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | ) ) ) ) ) ) | |
| Defendants. | ) | |

DOCKETED
JAN 0 6 2004

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Torres Drywall Services, Inc. ("Torres") filed, through the United States of America, Department of the Navy Wholesale Revitalization, a three-count complaint against Norden Enterprises, LLC ("Norden"), As-Ra Technologies, Inc. ("As-Ra"), Joseph J. Henderson & Sons, Inc. ("Henderson"), and Travelers Casualty and Surety Company of America ("Travelers"). Torres alleges violations of the Miller Act, 40 U.S.C. §§ 270a-d (Count I), breach of contract (Count II), and account stated (Count III). Presently before us is Defendants Henderson and Travelers' motion for partial summary judgment on Count I of Torres' complaint. Defendants Henderson and Travelers have also moved to dismiss Count I of Defendant As-Ra's cross-claim against Henderson and Travelers brought pursuant to the Miller Act. For the reasons set forth below, we grant both motions.



## BACKGROUND

The relevant facts are generally undisputed.[1] Torres brought its complaint to obtain payment for work performed on the whole house revitalization of family housing located in Forrestal Village at the Great Lakes Naval Training Center in Great Lakes, Illinois ("Project"). According to the complaint, on or about June 29, 2000, the United States Government, Department of Navy, entered into a contract with Defendant Henderson to act as general contractor for the Project. In compliance with the Miller Act, Henderson obtained a bond on the Project from Defendant Travelers. Henderson hired Defendant As-Ra as a subcontractor for the performance of asbestos and lead abatement and drywall work. As-Ra, in turn, hired Defendant Norden as a sub-subcontractor. On May 7, 2001, Norden then entered into a written subcontractor agreement with Torres for the performance of the drywall work. (Compl. ¶ 11).

Torres claims that it entered into an oral agreement with As-Ra on or about May 14, 2001, whereby As-Ra promised to compensate Torres if Norden failed to pay Torres. Torres also contends that it entered into another oral agreement with As-Ra on or about May 30, 2001, which guaranteed payment for services provided by Torres if Norden or Henderson failed to pay Torres. (Compl. ¶ 13, 15).

On June 14, 2001, Torres directly entered into a written subcontract with Henderson for the performance of drywall work on the Project. Torres began performance of this subcontract on June 21, 2001. On October 2, 2001, Torres sent a letter to As-Ra, Henderson and Torres claiming that it was owed the following amounts: Norden: $60,320; As-Ra, $123,356.04; and Henderson, $18,593.06. (Compl. ¶¶ 14, 16, 19, 20). Torres states that despite its demand upon Norden, As-Ra, and Henderson, all have refused to pay Torres the amount claimed. On October 15, 2001, Torres

---

[1]As acknowledged below, for purposes of the motion to dismiss the cross-claim, we limit our consideration to the well-pleaded allegations of the cross-claim. The facts recited in this section are derived from the complaint and are provided for context. The facts relevant to the motion for partial summary judgment are addressed more fully in that section.

served notice on Travelers. (Compl. ¶ 26; Compl. Exh. F). Torres then brought this complaint on November 20, 2001.

Defendant Norden has neither appeared nor answered Torres' complaint. Defendants Henderson and Travelers answered and filed a cross-claim against As-Ra. Henderson and Travelers filed the present motion for partial summary judgment on Count I of the complaint contending they are not liable under the Miller Act for the money Norden and As-Ra allegedly owe Torres. As-Ra appeared and filed a motion to dismiss the complaint and cross-claim, which was denied, but failed to answer the complaint or cross-claim and did not participate in discovery. A default judgment was entered as to As-Ra on June 2, 2003, but As-Ra's motion to vacate the default judgment was granted, and As-Ra was granted leave to answer. On September 10, 2003, As-Ra filed its answer to the complaint and cross-claim as well as a "Counter-Complaint" against co-defendants Henderson and Travelers. Henderson and Travelers filed the present motion to dismiss Count I of As-Ra's cross-claim, which is a claim brought under the Miller Act.

We will discuss both the motion to dismiss Count I of As-Ra's cross-claim and the motion for partial summary judgment on Count I of the complaint.

## DISCUSSION

### I. Motion to Dismiss

As-Ra filed what it called a "Counter-Complaint," although it is actually a cross-claim, on September 10, 2003.[2] It contains three counts. In Count I, As-Ra seeks to collect money under the Miller Act allegedly owed to it by Henderson; in Count II, As-Ra alleges a breach of contract; and in Count III, As-Ra claims that an account stated exists between the parties. As-Ra states that Henderson has paid it $552,741.29 and paid As-Ra's suppliers $73,230.59, but claims Henderson

---

[2]In considering this motion to dismiss, we accept all well-pleaded factual allegations, as well as all reasonable inferences which may be drawn from those facts in the cross-claim as true. See *Triad Assocs. Inc. v. Robinson*, 10 F.3d 492, 495 (7th Cir. 1993). The facts set out in this section are derived from the cross-claim.

3

still owes As-Ra $502,790.99 for work As-Ra performed as a subcontractor for Henderson for the Project. (Counter-Compl. ¶¶ 7,9). As-Ra states that the labor and material supplied by As-Ra was in prosecution of the work provided for in the contract with Henderson and that the last labor it performed on the subcontract was on June 4, 2002.³ (Counter-Compl. ¶ 16). Henderson and Travelers move to dismiss Count I of As-Ra's cross-claim in its entirety because As-Ra's suit was not filed within the statutory time frame.⁴

Under the Miller Act, "no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him." 40 U.S.C. § 270b(b). The Seventh Circuit has explained that "the giving of notice and bringing of suit within the prescribed time is a condition precedent to the right to maintain the action." *U.S. ex rel. General Dynamics Corp. v. Home Indem. Co.*, 489 F.2d 1004, 1005 (7th Cir. 1973). As mentioned above, As-Ra states in its cross-claim that the last day it performed labor on the Project was June 4, 2002. (Counter-Compl. ¶ 16). In light of this statement, As-Ra had until June 4, 2003 to institute its action against Henderson under the Miller Act. Although in its September 10, 2003 cross-claim As-Ra stated, "this case has been pending for more than ninety (90) days and less than one (1) year after As-Ra provided the last of the labor and material pursuant to the . . . contract," As-Ra does not contend that it filed a claim against Henderson on or before June 4, 2003. Indeed, its claim under the Miller

---

³As-Ra states that on August 30, 2002, As-Ra provided Henderson with notice of its claims via certified mail. (Counter-Compl. ¶ 12).

⁴The Seventh Circuit has explained that "if a plaintiff pleads facts that show its suit [is] barred by a statute of limitations, it may plead itself out of court under a Rule 12(b)(6) analysis." *Whirlpool Financial Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995); *see also Tregenza v. Great Am. Communications Co.*, 12 F.3d 717, 718 (7th Cir. 1993) (if a party "pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court."); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) ("While the language of Fed.R.Civ.P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.").

Act against Henderson and Travelers was not filed until September 10, 2003. Given these admissions, the plain language of the Miller Act requires dismissal of As-Ra's Miller Act claim.

As-Ra argues in its response to the motion to dismiss, however, that our order of July 31, 2003 vacating the default judgment entered against it and granting As-Ra leave to file its answer "was tantamount to an authorization to As-Ra to file its claims." Response at 2. As-Ra's interpretation of our order is strained.[5] Indeed, by the time As-Ra filed its motion to vacate the default judgment, As-Ra had already missed the one-year filing deadline.

The relation back doctrine will not save As-Ra's untimely claim either. Federal Rule of Civil Procedure 13, which governs counter-claims and cross-claims, does not contain a provision that allows for counter-claims or cross-claims to relate back to the original filing of the complaint.[6] The common law rule that statutes of limitations do not run against pure defenses does not apply to counter-claims or cross-claims that are affirmative, independent causes of action. *See Chauffeurs, Teamsters, Warehousemen and Helpers v. Jefferson Trucking Co., Inc.*, 628 F.2d 1023, 1027 (7th Cir. 1980), *cert. denied* 449 U.S. 1125 (1981). Federal courts distinguish between claims where the defendant seeks to reduce the amount a plaintiff can recover (through such defensive claims as indemnification or contribution) and those where defendant is seeking affirmative relief. *Franklin Pavkov Constr. Co. v. Ultra Roof, Inc.*, 51 F. Supp.2d 204, 222 (N.D.N.Y. 1999) (applying distinction to determine whether cross-claim brought under the Miller Act that was filed more than

---

[5]The only case As-Ra cites to support its argument that our order extended the statute of limitations is *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992 (8th Cir. 1989). In *Morgan*, the court held that the district court did not err by granting leave to a party to file a brief in support of a motion for j.n.o.v. outside the 10-day time period for the filing of the j.n.o.v. motion. The Eighth Circuit based its decision to affirm primarily on its recognition that the interpretation of local rules is left, to a large extent, to the court that adopted them, and that the rule that a brief accompany any motion was a local rule. *Id.* at 996. Here, As-Ra had already missed the deadline well before we ever entered our order. Furthermore, our order did not address the Miller Act's filing limitations.

[6]Moreover, Federal Rule of Civil Procedure 15(c) does not apply here because As-Ra has filed no previous pleading to which the cross-claim could relate back.

5

one year after the statute of limitations commenced could relate back to the time the original complaint was filed); *see also U.S. ex rel. Bros. Builders Supply Co. v. Old World Artisans, Inc.*, 702 F. Supp. 1561, 1569-70 (N.D. Ga. 1988) (same). Defensive claims generally relate back whereas affirmative claims are subject to the statute of limitations.[7] *Franklin Pavkov*, 51 F. Supp.2d at 222 (citations omitted). As-Ra's claim for over $500,000 for work performed up until June 4, 2002, is a completely affirmative, independent cause of action. Nowhere in its Miller Act claim does As-Ra discuss Torres or seek indemnification or contribution from Henderson for Torres' claims against As-Ra; the claim has nothing to do with Torres' claim for payment for the drywall work it performed amounting to $123,356.04. As-Ra's cross-claim simply seeks affirmative recovery: payment for the work it performed for Henderson. We therefore conclude that because As-Ra's cross-claim is an independent cause of action under the Miller Act against Henderson and Travelers, it should not relate back to the filing of the original complaint. Thus, the Miller Act claim against Henderson and Travelers is barred because it was not filed within the one-year period as required by the Miller Act.[8]

---

[7]For instance, according to *Franklin Pavkov* and *Brothers Builders*, were the cross-claim to seek payment for the same labor and materials for which Torres seeks payment, the cross-claim could relate back.

[8]Further, any plea to this court to enlarge the time limit for equitable reasons is denied. As-Ra seems to be arguing that because Henderson had notice of its claim, the time limit should be enlarged based on equitable estoppel. Response, at 2 (citing *U.S. v. Fidelity & Deposit Co. of Maryland*, 813 F.2d 697 (5th Cir. 1987) (remanding to the district court for determination as to whether equitable considerations exist given that there were certain indications that assurances of payment were made by contractor)). But equitable estoppel, when invoked as a defense to the statute of limitations, "requires the plaintiff to show that the defendant took steps deliberately to prevent the plaintiff from bringing a timely suit, whether by concealing the existence of the plaintiff's claim or by promising not to plead the statute of limitations." *Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621, 622 (7th Cir. 2002). There is no indication in this case, and As-Ra has alleged none, that Henderson induced As-Ra to postpone filing its claim or concealed the existence of As-Ra's claim. To the contrary, it was As-Ra's delinquency, dating back to the inception of this lawsuit in 2001, that has led to its failure to comply with the limitations period. Although As-Ra filed a motion to dismiss on June 7, 2002 (which was denied on July 22, 2002), As-Ra then failed to answer or comply with discovery for over one year, ultimately resulting in the entry of a default judgment against it.

Accordingly, Defendant Henderson and Travelers' motion to dismiss As-Ra's cross-claim filed under the Miller Act is granted.

## II. Motion for Partial Summary Judgment as to the Miller Act claim

### A. Standard of Review

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted). Once the moving party has met this burden of production, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

### B. Local Rule 56.1

Local Rule 56.1 sets forth the requirements for supporting and opposing motions for summary judgment. In addition to its memorandum in support of its motion for summary judgment, the movant is required to submit a statement of undisputed material facts that it contends entitles it to judgment as a matter of law. The nonmovant must file a supporting memorandum of law, opposing affidavits or other materials referred to in Fed. R. Civ. P. 56(e), and submit a concise response that must contain, "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials replied upon." L.R. 56.1(b)(3)(A). Moreover, the nonmoving party shall file its

own statement of any additional facts that require the denial of summary judgment. L.R. 56.1(b)(3)(B). The Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (quoting *Markham v. White*, 172 F.3d 486, 490 (7th Cir. 1990)).

Torres has violated Local Rule 56.1 by failing to respond to Henderson and Travelers' statement of undisputed facts submitted pursuant to Local Rule 56.1. The rule is clear: by failing to properly respond to a movant's 56.1 statement, "all material facts set forth in the statement required of the moving party will be deemed to be admitted. . ." L.R. 56.1(b)(3)(B); *see also Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("Essentially, the penalty for failing to properly respond to a movant's 56.1(a) statement is usually summary judgment for the movant (at least if the movant has done his or her job correctly) because the movant's factual allegations are deemed admitted."). Accordingly, we "depart from our usual posture of construing all facts in favor of the non-moving party." *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995). Instead, we accept as true all material facts properly set forth in Henderson and Travelers' 56.1 statement of material facts. *See id.*

Furthermore, Torres did not submit a statement of additional facts opposing summary judgment.[9] A statement of additional facts filed pursuant to Local Rule 56.1(b)(3)(B) "provides the only acceptable means of . . . presenting additional facts to the district court." *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (affirming district court's finding that additional facts set forth in the party's memorandum in opposition to summary judgment were not properly before

---

[9]Defendants Henderson and Travelers filed their motion for partial summary judgment on March 11, 2003. Torres' response was due on April 29, 2003 and the reply was due on May 5, 2003. Torres failed to file its response by the deadline and on May 22, 2003, sought an extension. We admonished Torres for its excessive delay and ordered that a response be filed by June 19, 2003. Torres complied with this deadline.

8

the court and should not be considered). Moreover, on July 1, 2003, Torres was put on notice of the potential consequences of failing to file its 56.1 statement when Defendants Henderson and Travelers, in their reply, outlined the implications of neglecting to file a 56.1 statement. As a result, Henderson and Travelers requested that the fact section of Torres' response be stricken. Nevertheless, to date, Torres has not filed a response to Henderson and Travelers' 56.1 statement of material facts or a 56.1 statement of additional facts. By failing to do so, Torres has lost its ability to bring additional facts before this court. *Id.* at 1313, 1316-17. With these principles in mind, we now turn to the merits of the partial summary judgment motion.

### C.     Miller Act

The Miller Act provides a private right of action to an unpaid subcontractor on a federal project to collect on the bond posted for the project. Specifically, the Miller Act states:

> Any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor . . . for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied. . .

40 U.S.C. § 270b(a). Defendants have moved for partial summary judgment as to Torres' Miller Act claim for money owed for the work that Torres performed for Norden and As-Ra.[10]

#### 1.     The Scope of the Miller Act

Torres was brought into this Project to perform work for Norden, a sub-subcontractor. Henderson and Travelers argue that the Miller Act does not extend to third-tier subcontractors, and as such, any monies owed by Norden are beyond the coverage of the Miller Act bond. We agree. The Supreme Court has explained:

---

[10]In its complaint, Torres also seeks to collect payment for work Torres performed as a subcontractor for Henderson from June 20, 2001 to August 2, 2001. Defendants have not moved for summary judgment on this component of Torres' Miller Act claim.

9

> [T]he right to bring suit on a payment bond is limited to (1) those materialmen, laborers and subcontractors who deal directly with the prime contractor and (2) those materialmen, laborers and sub-contractors who, lacking express or implied contractual relationship with the prime contractor, have direct contractual relationship with a subcontractor and who give the statutory notice of their claims to the prime contractor. To allow those in more remote relationships to recover on the bond would be contrary to the clear language of the proviso and to the expressed will of the framers of the Act.

*Clifford F. MacEvoy Co. v. U.S. ex rel. Tomkins Co.*, 322 U.S. 102, 107-108 (1944); *see also J.W. Bateson Co., Inc. v. U.S. ex rel. Bd. of Trustees of the Nat. Automatic Sprinkler Indus. Pension Fund*, 434 U.S. 586, 591 (1978) (Congress "intended the scope of protection of a payment bond to extend no further than to sub-subcontractors"); *see also U.S. ex rel. Water Works Supply Corp. v. George Hyman Constr. Co.*, 131 F.3d 28, 31 (1st Cir. 1997) ("[t]he Supreme Court has interpreted [§ 270b(a)] to preclude recovery on the payment bond by anyone whose relationship to the general contractor is more remote than a second-tier subcontractor"); *Garden State Erectors, Inc. v. Nash*, 599 F.2d 1279, 1281 (3d Cir. 1979) (subcontractor to sub-subcontractor or "third-tier subcontractor" with no ties to the first-tier or primary subcontractor was too remotely connected with subcontractor to recover under the Miller Act). Here, Torres had a direct contractual relationship with a sub-subcontractor, thereby placing him outside the scope of the Miller Act for work performed under the subcontract for Norden.

Defendants Henderson and Travelers also contest their liability under the Miller Act for money Torres claims As-Ra owes it. Although it is undisputed that As-Ra was a subcontractor for Henderson in this Project, Defendants contend that As-Ra and Torres never had a "direct contractual relationship" as required by the Act and thus the Miller Act should not apply to Torres' claims. Torres admits that it had no written contract to provide services as a subcontractor to As-Ra. (Def. Req. for Admission ¶ 9; Pl. Answer ¶ 9). Rather, Torres contends that on May 14, 2001, As-Ra orally guaranteed Torres, through one of its agents, that all services Torres provided would be compensated by As-Ra in the event Norden failed to pay Torres for its work. (Compl. ¶ 13). Torres

also claims that on May 30, 2001, As-Ra orally guaranteed that it would compensate Torres in the event Henderson or Norden failed to pay Torres for its work. (Compl. ¶ 14). Torres contends it performed services under this agreement with As-Ra for which it is entitled to payment. It is unclear how this alleged oral guaranty agreement transforms work provided under a contract with Norden (which, as discussed above is too remote a relationship to be covered by the Miller Act bond) into a contractual relationship within the scope of the Miller Act.

At least one circuit has specifically addressed this situation and explained, "[o]n its face, the Miller Act provides a right of action only for those who have a contract to furnish labor or material to the contractor or subcontractor; it does not provide a right of action for those who have a guaranty agreement with the contractor or subcontractor." *U.S. ex rel. Gold Bond Bldg. Prods. v. Blake Constr. Co., Inc.*, 820 F.2d 139, 142 (5th Cir. 1987). In that case, Gold Bond supplied materials to a sub-subcontractor, Mt. Hawley, which in turn sold the materials to a subcontractor, Interior Construction. Gold Bond required a guarantee from Interior Construction of payment of the bill for the materials sold to Mt. Hawley. Thus, Gold Bond and Interior Construction entered into a written guaranty which allowed Gold Bond to take direct action against Interior Construction upon Mt. Hawley's default. *Id.* at 140, 142. The Fifth Circuit affirmed the district court's conclusion that "the guaranty agreement between Gold Bond and Interior Construction was not the kind of 'direct contractual relationship' with Interior Construction entitling Gold Bond to coverage under the Miller Act." *Id.* at 140. Torres has pointed to no case that holds otherwise. Here, Torres, like Gold Bond, entered into a guaranty agreement with a subcontractor. We agree with *Gold Bond* that such an agreement does not bring a remote supplier, or in this case, laborer, under the coverage of the Miller Act. We thus conclude that Torres' claims for work performed for Norden and money allegedly owed by As-Ra are not within the scope of the Miller Act.

11

## 2. Notice

Even if Torres' claims for money owed by As-Ra and Norden fall within the scope of the Miller Act, Torres failed to provide timely notice as required by the Miller Act to Henderson of its claims for money due for the work it performed for Norden and per the guaranty agreement with As-Ra. In this case, Torres claims he is owed money for work he performed for Norden, As-Ra and Henderson. Henderson has moved for summary judgment only on the claims as to Norden and As-Ra.[11]

The Miller Act requires those covered under the Act to provide written notice to the contractor "within ninety days from the date on which such person did or performed the last of the labor . . . for which such claim is made." 40 U.S.C. § 270b(a). Although the Miller Act should be liberally construed so as "to effectuate its protective purposes," *U.S. ex rel. Sherman v. Carter*, 353 U.S. 210, 216 (1957), the "'liberality' goes to the remedial provisions of the statute, not the notice provisions." *Am. Builders & Contractors Supply Co., Inc. v. Bradley Constr. Co.*, 960 F. Supp. 145, 147 (N.D. Ill. 1997) (quoting *U.S. ex rel. Gen. Dynamics Corp. v. Home Indem. Co.*, 489 F.2d 1004, 1005 (7th Cir. 1973)). The requirement that the notice be submitted within ninety days is a strict "condition precedent." *Am. Builders*, 960 F. Supp. at 147.

Torres admits that the work it performed for As-Ra and Norden was completed by June 21, 2001, and the amount sought for its work for Norden and for its work for As-Ra or guaranteed by As-Ra is for work it performed prior to June 21, 2001. (Def. Req. ¶¶ 16-17; Pl. Answer ¶¶ 16-17).[12] As such, notice for these claims was required to have been received by September 19, 2001. In its

---

[11] The timeliness of the notice as to claims for work provided under Torres' subcontract with Henderson is not at issue in the present motion.

[12] Torres also admitted that it "sent no notice under the Miller Act to the Navy or Henderson within 90 days of the last work it performed for Norden on the Navy Project" and admitted "Torres sent no notice under the Miller Act to the Navy or Henderson within 90 days of the last work it claims was unpaid and performed for or guaranteed by As-RaTech." (Def. Req. ¶¶ 19-20; Pl. Answer ¶¶ 19-20).

12

complaint, Torres alleges that "[o]n October 2, 2001, said notice was provided to all contractors a copy of which is attached hereto as Exhibit D." (Compl. ¶ 23). Exhibit D is a letter, dated October 2, 2001, sent via registered mail, to Henderson listing its claims for payment and stating that "[n]otice is given pursuant to the Miller Act." (Compl. Exh. D). Furthermore, in response to Defendant Henderson's Request for Admission, Torres specifically admitted that "[t]he only notice the Plaintiff Torres sent to Henderson or the Navy under the Miller Act was dated and mailed October 2, 2001 and attached to the Complaint as Exhibit E." (Def. Req. ¶ 18; Pl. Answer ¶ 18).[13] Given these admissions, we find that the October 2, 2001 letter giving notice to Henderson of Torres' Miller Act claims against Norden and As-Ra was not timely.

Torres argues that the agreements he made with Norden, As-Ra, and Henderson "were actually one continuous series of contracts, both oral and written." Response, at 10. Torres also argues that Henderson had knowledge that Torres was providing services on the project site thereby alerting Henderson to Torres' potential future claims. However, the written contract formed between Henderson and Torres on June 14, 2001 does not extinguish the need for Torres to provide proper notice to Henderson about its claims under the Miller Act as to projects performed for others. Indeed, a subsequent direct contractual relationship with the general contractor does not exempt a claimant from the Miller Act notice requirements for work performed as a sub-subcontractor. *See U.S. ex rel. Tonawanda Tank Transp. Serv., Inc. v. Hartford Casualty Ins. Co.*, 738 F. Supp. 44, 45 (D. Mass. 1990); *see also U.S. ex rel. Munroe-Langstroth, Inc. v. Praught*, 270 F.2d 235, 237 (1st Cir. 1959) (a person who has a direct contractual relationship with a general contractor to perform part of the work covered by the prime contract may not assert a claim under the Miller Act against

---

[13]Moreover, by failing to respond to Defendants' Rule 56.1 statement, Defendants' statement that "plaintiff filed and served only one ninety-day notice under the Miller Act dated October 2, 2001" remains uncontested. (Def. L.R. 56.1 ¶ 5). Also, any additional facts Torres attempts to raise in its response to Defendants' motion for partial summary judgment are not properly before this court. *See Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995).

the general contractor for other work furnished to another subcontractor if he has failed to give the general contractor written notice of his claim within ninety days of completion of the work). Torres' October 2, 2001 letter was not timely as to claims for work provided to sub-subcontractor Norden or subcontractor As-Ra. Accordingly, summary judgment is proper as to Torres' claims under the Miller Act which seek payment for work performed for Norden or claimed to be owed by As-Ra.

## CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment is granted. Count I of the complaint, filed pursuant to the Miller Act, is dismissed as to claims for monies owed under the subcontract with Norden and any agreement with As-Ra. Additionally, Defendant Henderson and Travelers' motion to dismiss As-Ra's cross-claim filed under the Miller Act is granted. As set forth in our previous order, the parties are to file their joint pre-trial order on January 29, 2004. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Date 1/5/04